1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11   SAUNDRA L. TUNSTELL,                )   Case No. CV 11-9462-SP
12                Plaintiff,              )
                                          )
13          v.                            )   **MEMORANDUM OPINION AND**
                                          )   **ORDER**
14   MICHAEL J. ASTRUE,                   )
15   Commissioner of Social Security      )
     Administration,                      )
16                                        )
                 Defendant.               )
17                                        )
                                          )
18   ─────────────────────────────

19                          **I.**
20                   **INTRODUCTION**
21          On November 23, 2011, plaintiff Saundra L. Tunstell filed a complaint
22   against defendant Michael J. Astrue, seeking a review of a denial of Disability
23   Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI").
24   Both plaintiff and defendant have consented to proceed for all purposes before the
25   assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is
26   now complete, and the court deems the matter suitable for adjudication without oral
27   argument.
28          The issue presented for decision here is whether the Administrative Law

1   Judge ("ALJ") properly evaluated plaintiff's credibility and subjective complaints.
2   Pl.'s Mem. at 3-9; Def.'s Mem. at 2-5.

3          Having carefully studied, inter alia, the parties' written submissions and the
4   Administrative Record ("AR"), the court concludes that, as detailed herein, the ALJ
5   inappropriately discounted plaintiff's credibility and her subjective complaints.
6   Therefore, the court remands this matter to the Commissioner in accordance with
7   the principles and instructions enunciated in this Memorandum Opinion and Order.

8                                          **II.**

9                      **FACTUAL AND PROCEDURAL BACKGROUND**

10         Plaintiff, who was forty-nine years old on the date of her November 2, 2010
11   administrative hearing, has an 11th grade education. *See* AR at 46.  Her past
12   relevant work includes employment as an in-home caregiver and a supermarket
13   clerk. *Id.* at 47.

14         On September 25, 2009 and on September 30, 2009, plaintiff applied for DIB
15   and SSI, respectively, alleging that she has been disabled since January 15, 2009,
16   due to spinal cord injury. *Id.* at 48, 58-59, 137-149.  After plaintiff's applications
17   were denied initially on December 16, 2009, she filed a request for a hearing. *Id.* at
18   66.

19         On November 2, 2010, plaintiff, represented by counsel, appeared and
20   testified at a hearing before the ALJ. *Id.* at 43-57.   The ALJ also heard testimony
21   from Richard Hutson, a medical expert ("ME"). *Id.* at 48-51.  Thereafter, Heidi
22   Paul, a vocational expert, testified. *Id.* at 52-57.  On November 29, 2010, the ALJ
23   denied plaintiff's request for benefits. *Id.* at 23-34.

24         Applying the well-known five-step sequential evaluation process, the ALJ
25   found, at step one, that plaintiff has not engaged in substantial gainful activity since
26   her alleged disability onset date. *Id.* at 28.

27         At step two, the ALJ found that plaintiff suffers from severe medically
28   determinable impairments including degenerative disc disorder and degenerative

1   joint disease in the cervical spine. *Id.*

2        At step three, the ALJ determined that the evidence does not demonstrate that

3   plaintiff's impairments, either individually or in combination, meet or medically

4   equal the severity of any listed impairments set forth in 20 C.F.R. Part 404, Subpart

5   P, Appendix 1. *Id.* at 30.

6        The ALJ then assessed plaintiff's residual functional capacity ("RFC")[1] and

7   determined that she can perform light work. Specifically, the ALJ found that:

8             [plaintiff] can lift, carry, push and pull 20 pounds occasionally and 10

9             pounds frequently. She can sit, walk and stand for 6 hours out of an 8-

10            hour day with normal breaks. She does not need an assistive device for

11            ambulation. She can bend, kneel, stoop, crawl and crouch frequently.

12            She can walk on uneven terrain. Movements such as climbing ladders

13            should be limited to occasionally. She can frequently use her hands for

14            fine and gross manipulative movements.

15   *Id.* at 30-31.

16        The ALJ found, at step four, that plaintiff lacks the ability to perform any of

17   her past relevant work. *Id.* at 32.

18        At step five, based upon plaintiff's vocational factors and RFC, the ALJ

19   found that "there are jobs that exist in significant numbers in the national economy

20   that [plaintiff] can perform." *Id*. The ALJ therefore concluded that plaintiff was not

21   suffering from a disability as defined by the Social Security Act. *Id.* at 33.

22        Plaintiff filed a timely request for review of the ALJ's decision, which was

23

24   _____

25   [1] Residual functional capacity is what a claimant can still do despite existing

26   exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155

     n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the

27   ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

     residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir.

28   2007).

1  denied by the Appeals Council on September 16, 2011.  *Id.* at 1-6.  The ALJ's
2  decision stands as the final decision of the Commissioner.

### III.

### STANDARD OF REVIEW

5  This court is empowered to review decisions by the Commissioner to deny
6  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
7  Administration must be upheld if they are free of legal error and supported by
8  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).
9  But if the court determines that the ALJ's findings are based on legal error or are
10 not supported by substantial evidence in the record, the court may reject the findings
11 and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033,
12 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

13 "Substantial evidence is more than a mere scintilla, but less than a
14 preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
15 evidence which a reasonable person might accept as adequate to support a
16 conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276
17 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding,
18 the reviewing court must review the administrative record as a whole, "weighing
19 both the evidence that supports and the evidence that detracts from the ALJ's
20 conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed
21 simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d
22 at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the
23 evidence can reasonably support either affirming or reversing the ALJ's decision,
24 the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*
25 (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### IV.

### DISCUSSION

28 Plaintiff argues that "the ALJ committed reversible error in evaluating [her]

1    pain testimony." Pl.'s Mem. at 3. Specifically, plaintiff maintains that the ALJ
2    "failed to articulate clear and convincing reasons for rejecting [her] testimony
3    regarding her debilitating pain symptoms." *Id.* The court agrees.

4         A plaintiff seeking DIB or SSI carries the burden of producing objective
5    medical evidence of his or her impairments and showing that the impairments could
6    reasonably be expected to produce some degree of the alleged symptoms. *Benton ex*
7    *rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff
8    meets that burden, medical findings are not required to support the alleged severity
9    of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also*
10   *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not
11   present clinical or diagnostic evidence to support the severity of his pain" (citation
12   omitted)).

13        Instead, once a plaintiff has met the burden of producing objective medical
14   evidence, an ALJ can reject a plaintiff's subjective complaint "only upon (1) finding
15   evidence of malingering, or (2) expressing clear and convincing reasons for doing
16   so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in
17   weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2)
18   inconsistencies either in the plaintiff's testimony or between the plaintiff's
19   testimony and his or her conduct; (3) his or her daily activities; (4) his or her work
20   record; and (5) testimony from physicians and third parties concerning the nature,
21   severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*,
22   278 F.3d 947, 958-59 (9th Cir. 2002).

23        Here, the ALJ did not find evidence of malingering. *See generally* AR at 26-
24   34. Thus, in rejecting plaintiff's credibility the ALJ was required to articulate clear
25   and convincing reasons. *See Benton*, 331 F.3d at 1040. The court is persuaded that
26   the ALJ failed to do so here.

27        Although the articulated reasons may include findings from the objective
28   medical evidence, these reasons may not be based solely on the medical evidence.

1  Rather, where, as here, the plaintiff produced sufficient medical evidence of

2  underlying impairments that are likely to cause some degree of her alleged

3  symptoms, the ALJ errs to the extent he rejects the plaintiff's credibility based

4  solely upon a lack of medical evidence to substantiate her allegations.[2]  *See Bunnell*,

5  947 F.2d at 345 ("once [a] claimant produces objective medical evidence of an

6  underlying impairment, an [ALJ] may not reject [the] claimant's subjective

7  complaints based solely on a lack of objective medical evidence to fully corroborate

8  _____

9      [2] Plaintiff provided sufficient medical evidence of her underlying

10  impairments – degenerative disc disorder and degenerative joint disease in the
   cervical spine – that were likely to produce the symptoms she described. *See, e.g.*,

11  AR at 225, 253, 246-52, 238-42 (a December 21, 2008 examination indicated:

12  (1) acute pain due to trauma; (2) neck pain post-motor vehicle accident; (3) cervical
   spine sprain/strain; (4) cervical spine myofascitis; (5) cervical spine muscle spasm;

13  (6) thoracic spine sprain/strain; (7) thoracicalgia post-motor vehicle accident;

14  (8) right shoulder sprain/strain; (9) sprain/strain of the right anterior rib cage;
   (10) post-traumatic cephalgia; (11) cervical spine disc syndrome; (12) cervical spine

15  radiculitis to the upper extremity; (13) right forearm pain/strain; (14) right wrist

16  pain/strain; *id.* at 243-45, 232-33 (a December 24, 2008 evaluation indicated
   plaintiff suffered from cervical radiculitis, acute muscuoligamentous strain in neck,

17  chest, and lumbar regions, shoulder pain from acute strain, and acute post-traumatic

18  headache; plaintiff received a Toradol injection to control acute pain and was
   prescribed Cyclobenzaprine and Hydrocodone for her muscle pain); *id.* at 234-37

19  (in a January 21, 2009 evaluation, plaintiff was assessed with discogenic

20  muscuoligamentous strain of the neck, muscuoligamentous strain in the chest area,
   muscle spasms, acute muscuoligamentous strain of the lumbar area, acute shoulder

21  sprain, and acute post-traumatic headache; plaintiff was directed to continue taking

22  Cyclobenzaprine and Hydrocodone); *id.* at 239, 226-27 (a March 17, 2009 MRI
   scan of plaintiff's cervical spine revealed (1) a right paracentral protrusion with

23  inferior extrusion that results in flattening/compression of the right cervical cord

24  with mild edema at C6-C7; (2) mild central canal narrowing at C3-C4 and C5-C6;
   (3) moderate bilateral C4-C5 and left-sided C5-C6 neural foraminal narrowing; and

25  (4) C7-T1 moderate left neural foraminal narrowing; *id.* at 228-31 (a March 31,

26  2009 evaluation indicated that plaintiff suffered from (1) persistent neck pain, right
   upper extremity radiculopathy, and (2) disc herniation and ruptures at C5-C6 and

27  C6-C7 levels).

28

1   the alleged severity of pain" (citation omitted)); SSR 96-7P, 1996 WL 374186, at *1

2   (claimant's "statements about the intensity and persistence of pain or other

3   symptoms or about the effect the symptoms have on his or her ability to work may

4   not be disregarded solely because they are not substantiated by objective medical

5   evidence").

6         In determining plaintiff's RFC, the ALJ found plaintiff's impairments could

7   be expected to cause some of her alleged symptoms, but that her "statements

8   concerning the intensity, persistence and limiting effects of these symptoms are not

9   credible to the extent they are inconsistent with the above residual functional

10  capacity assessment."  AR at 32.  In rejecting plaintiff's credibility, the ALJ

11  specifically found that "[plaintiff's] allegations cannot be substantiated by the

12  medical evidence."  *Id.* at 31.  The ALJ provided a thorough analysis of the record

13  to support his findings, but failed to state any other valid reason for discounting

14  plaintiff's credibility apart from the objective medical evidence.  *See generally id.* at

15  28-32.

16        The ALJ also suggested he found plaintiff's complaints incredible based on

17  supposedly conservative treatment.  Specifically, he stated that plaintiff was not

18  using strong narcotics to relieve her pain.  *Id.* at 31.  But the ostensible reason to

19  discount plaintiff's credibility is not supported by the record.  As plaintiff points out,

20  she has used narcotic pain medication as prescribed by physicians, including

21  Vicodin and Hydrocodone.  *Id.* at  230, 232, 236, 260, 263.  *See Diaz v. Prudential*

22  *Ins. Co. of Am.*, 499 F.3d 640 (7th Cir. 2007) (describing Vicodin as a "strong

23  drug"); *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1256 (D. Colo. 2009) (indicating

24  Vicodin as a "very strong pain medication"); *Abbott v. Astrue*, 391 F. App'x 554,

25  560 (7th Cir. 2010) (characterizing Hydrocodone as a "strong pain reliever[]").  The

26  narcotic pain medications did not provide plaintiff relief.  *See* AR at 229.

27  Consequently, plaintiff was found to be a candidate for neurosurgical intervention,

28  and plaintiff testified that the reason she did not have the surgery was that she could

7

1   not afford it. *Id.* at 49, 229. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)

2   (failure to seek treatment due to inability to pay cannot support an adverse

3   credibility determination). Thus, the ALJ's apparent rejection of plaintiff's

4   credibility based on conservative treatment as indicated by non-use of strong

5   narcotics is not justified.

6           In the same sentence in which the ALJ stated plaintiff was not using strong

7   narcotics, the ALJ also noted plaintiff did not complain of adverse side effects from

8   medication. AR at 31. To the extent the ALJ was suggesting plaintiff's failure to

9   take narcotic pain relievers is not explained by side effects, the point does not

10  support the ALJ's credibility finding for the reasons discussed in the preceding

11  paragraph. If, instead, the ALJ is making a separate attack on plaintiff's credibility

12  due to lack of side effects, this also is not a clear and convincing reason. First, as

13  plaintiff has indicated, she in fact did report adverse side effects. *Id.* at 174, 176. In

14  a "Pain Questionnaire" she filled out on October 27, 2009, plaintiff complained of

15  "hot flashes," "night [and] day shake," and "stomache [sic] ache," occurring as side

16  effects of medications she was taking. *Id.* at 174. And in any event, plaintiff clearly

17  testified that she does not believe that she is able to work because of pain and

18  functional limitations, rather than the side effects of the medications. *Id.* at 48, 166;

19  Pl.'s Mem. at 7. Therefore, the ALJ's finding that plaintiff reported no side effects

20  is both factually wrong and, even if true, insufficient to negate plaintiff's credibility.

21          Finally, the ALJ rejected plaintiff's subjective complaints based on the

22  opinions of the ME and a consulting internist that the ALJ interpreted as

23  determining plaintiff's ability to carry on certain daily activities. *See* AR at 31-32,

24  50-51, 297-302. But the ALJ made no inquiries of plaintiff during the November 2,

25  2009 administrative hearing as to the extent of plaintiff's actual ability to engage in

26  the daily activities he cited (*see id.* at 46-49), nor does he cite to other testimony or

27  statements by plaintiff regarding his daily activities. As such, the ALJ could not

28  provide any factual inconsistencies between what the medical professionals

1 believed plaintiff could do and what plaintiff claimed she was able to do.[3]

2 Furthermore, the ALJ did not explain how plaintiff's ability to engage in such daily

3 activities as "meal preparation, grocery shopping and doing laundry" (*id.* at 32), is

4 inconsistent with the intensity, persistence, and limiting effects of the symptoms she

5 claims, and it does not appear to be. Nor did the ALJ indicate how plaintiff's ability

6 to perform these daily activities translates into an ability to do activities that are

7 transferrable to a work setting. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th

8 Cir. 1990) (ALJ erred in failing to make a "finding to the effect that the ability to

9 perform those daily activities translated into the ability to perform appropriate

10 work").

11       Accordingly, the court finds that the ALJ failed to provide clear and

12 convincing reasons for discounting plaintiff's subjective complaints of pain and

13 limitations.

14                                      **V.**

15                        **REMAND IS APPROPRIATE**

16       The decision whether to remand for further proceedings or reverse and award

17 benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888

18 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further

19 proceedings, or where the record has been fully developed, it is appropriate to

20 exercise this discretion to direct an immediate award of benefits. *See Benecke v.*

21 *Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

22 1179-80 (9th Cir. 2000) (decision whether to remand for further proceedings turns

23 upon their likely utility). But where there are outstanding issues that must be

24 _____

25       [3] Defendant argues that lack of medical source opinions of disability is a valid
26 reason to discount plaintiff's complaints (Def.'s Mem. at 3), but this was not a
   reason given by the ALJ. *See Orn*, 495 F.3d at 630 ("We review only the reasons
27 provided by the ALJ in the disability determination and may not affirm the ALJ on a
   ground upon which he did not rely." (citation omitted)).
28

1   resolved before a determination can be made, and it is not clear from the record that

2   the ALJ would be required to find plaintiff disabled if all the evidence were

3   properly evaluated, remand is appropriate. *See Benecke*, 379 F.3d at 595-96;

4   *Harman*, 211 F.3d at 1179-80.

5        Here, remand is required because the ALJ erred in failing to properly evaluate

6   plaintiff's credibility.  On remand, the ALJ shall reconsider plaintiff's subjective

7   complaints with respect to her physical impairments and the resulting limitations,

8   and either credit plaintiff's testimony or provide clear and convincing reasons

9   supported by substantial evidence for rejecting them.  The ALJ shall then proceed

10  through steps four and five to determine what work, if any, plaintiff is capable of

11  performing.

12                                  **VI.**

13                          **CONCLUSION**

14       IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING

15  the decision of the Commissioner denying benefits, and REMANDING the matter

16  to the Commissioner for further administrative action consistent with this decision.

17

18  Dated:      August 30, 2012

19                                                    

20                                         SHERI PYM
21                              UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

                                        10